■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH C. JENKINS, Appellant. [935 NYS2d 204]—

Egan Jr., J.

In May 2008, Frank Kormos, an individual facing potential drug charges and seeking to curry favor with the Broome County Sheriff's Department, agreed to arrange a controlled buy with defendant. As a result of this successful transaction, defendant was indicted and charged with criminal sale of a controlled substance in the second degree, criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree (two counts). Following the denial of defendant's motion to suppress the physical evidence seized at the time of his arrest and a jury trial, defendant was convicted on all counts and sentenced to concurrent prison terms of seven years on each count followed by a period of postrelease supervision. Defendant's subsequent motion pursuant to CPLR 5525 (c) to settle the trial transcript was denied, prompting these appeals.

Initially, we reject defendant's assertion that County Court erred in denying his suppression motion. Probable cause for an arrest "exists when an officer has knowledge of facts and circumstances sufficient to support a reasonable belief that an offense has been or is being committed" (*People v Maldonado*, 86 NY2d 631, 635 [1995] [internal quotation marks and citation omitted]; *accord People v Parker*, 84 AD3d 1508, 1509 [2011]; *see People v Dowling*, 75 AD3d 838, 840 [2010], *lv denied* 15 NY3d 952 [2010]). "Such facts and circumstances must make it more probable than not that a crime has taken place and that the one arrested is its perpetrator" (*People v Parker*, 84 AD3d at 1509 [internal quotation marks and citations omitted]). In this regard, "[a]n arresting officer may rely on information obtained from a fellow officer so long as the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest" (*People v Sudler*, 75 AD3d 901, 902 [2010], *lv denied* 15 NY3d 956 [2010] [internal quotation marks and citations omitted]; *see People v Douglas*, 42 AD3d 756, 758 [2007], *lv denied* 9 NY3d 922 [2007]; *People v Bell*, 5 AD3d 858, 859 [2004]).

Here, the record reflects that on the evening in question, Kormos agreed to contact defendant, an individual known to him as "Joe Man," and arrange to purchase a quantity of

cocaine. Kormos—in the presence of Detective Sergeant Frederick Akshar and utilizing the speaker phone feature on his cell phone—contacted Joe Man, who agreed to meet Kormas in one hour on Medford Street, a dead-end street located in the City of Binghamton, Broome County, and sell him one half of an ounce of cocaine. Kormos described Joe Man as a light-skinned black male, who would be coming from the direction of the Village of Johnson City in Broome County and driving a "very nice black Audi." Approximately 25 minutes later, Joe Man called back and indicated that he was en route, at which time Akshar relayed the time and location of the buy, as well as the description of Joe Man, the vehicle and the quantity of drugs to be sold, to his fellow officers. At the appointed hour, a vehicle and individual matching that description stopped short of the intersection of Medford and Saratoga Streets and was approached by Sergeant Christopher Bracco. As the vehicle started to move forward, Bracco drew his weapon and ordered the occupant, whom he later identified as defendant, out of the car. A search of the vehicle revealed a plastic baggie containing a substance that subsequently tested positive for cocaine, and Kormos identified defendant as Joe Man during a showup conducted at the scene. Such circumstances, in our view, provided the officers in question with a reasonable belief that defendant had agreed to—and was in fact at that location in order to—sell cocaine, thereby establishing probable cause for his arrest (*see People v Sudler*, 75 AD3d at 902-903; *People v Dowling*, 75 AD3d at 840).*

Although defendant characterizes Kormos as a confidential informant and argues that his reliability was not sufficiently established, we disagree. As noted previously, Akshar was present for and overheard both sides of the conversation between Kormos and defendant, during the course of which defendant agreed to sell Kormos a quantity of cocaine. At that point, Akshar no longer was relying or acting upon information provided by Kormos but, rather, upon information obtained by the use of his own senses. Under these circumstances, we discern no need to independently establish Kormos's reliability. Accordingly, defendant's suppression motion was properly denied.

Defendant next contends that the failure to transcribe the voir dire proceeding in its entirety mandates reversal of his

---

* Although there is some dispute as to whether Bracco was present for the initial phone call and where such call took place, Akshar's testimony, if credited and when combined with the surrounding circumstances, is sufficient to establish the required probable cause.

conviction. Although we agree that "[v]erbatim recordation of the [trial] proceedings is the 'better practice', unless waived" (*People v Harrison*, 85 NY2d 794, 796 [1995]), the case law makes clear that "the absence of a stenographic record does not, per se, require reversal of [a] defendant's conviction" (*id.* at 796; *see People v Asencia*, 280 AD2d 678, 678-679 [2001]; *People v Lane*, 241 AD2d 763, 763 [1997], *lv denied* 91 NY2d 875 [1997])—notwithstanding the seemingly absolute dictates of Judiciary Law § 295. "Rather, a defendant must show that a request was made that the voir dire proceedings be recorded, the request was denied, and the failure to record the proceedings prejudiced him or her in some manner" (*People v Lane*, 241 AD2d at 763 [citations omitted]; *see People v Rick*, 224 AD2d 790, 790 [1996], *lv denied* 88 NY2d 852 [1996]).

Here, although County Court's questioning of the panel of prospective jurors was stenographically recorded, as well as counsels' ensuing challenges thereto (including the two *Batson* objections) (*see Batson v Kentucky*, 476 US 79 [1986]), counsels' questioning of the panel was not. There is, however, no indication that defense counsel ever requested that the entire voir dire proceeding be recorded, nor is there anything in the record to suggest that counsel and/or defendant somehow were lulled into believing that such transcription was taking place. Further, defendant has failed to demonstrate any resulting prejudice— particularly in view of the fact that he did not respond to the People's race-neutral explanation for excluding the jurors in question or otherwise assert that the reasons for their exclusion were pretextual, thereby failing to preserve any potential *Batson* issues (*see People v Knowles*, 79 AD3d 16, 21 [2010], *lv denied* 16 NY3d 896 [2011]). Under such circumstances, reversal of the conviction on this ground is not warranted (*see People v Asencia*, 280 AD2d at 679; *People v Vasquez*, 226 AD2d 932, 932-933 [1996], *affd* 89 NY2d 521 [1997], *cert denied sub nom. Cordero v Lalor*, 522 US 846 [1997]; *compare People v Fleming*, 221 AD2d 287, 287-288 [1995]).

As for defendant's related motion to settle the trial transcript, although we reject the People's assertion that defendant cannot appeal the denial thereof (*see People v La Motte*, 276 AD2d 931 [2000]; *People v Hummer*, 217 AD2d 713 [1995], *lv denied* 86 NY2d 843 [1995]), we nonetheless agree that the motion was properly denied. As noted previously, defendant not only failed to request that voir dire be transcribed in its entirety but, more significantly, neglected to preserve any potential *Batson* issues. Under these circumstances, we agree that a reconstruction hearing would be pointless.

Finally, we find no merit to defendant's claim of ineffective assistance of counsel, which is premised upon defense counsel's concession—in both his opening and closing statements—that defendant was guilty of criminal possession of a controlled substance in the third degree. "[S]uch defense tactics, whereby counsel admits guilt on a lesser charge in the hope that the jury would then be more receptive to the claim that the defendant was innocent of the far more serious offense and acquit him thereof, is a perfectly acceptable strategy which should not be second guess[ed] by the courts" (*People v Hines*, 46 AD3d 912, 913 [2007], *lv denied* 10 NY3d 812 [2008] [internal quotation marks and citations omitted]; *accord People v Goss*, 229 AD2d 791, 793 [1996]; *see People v Smith*, 11 AD3d 899, 900-901 [2004], *lv denied* 3 NY3d 761 [2004]; *People v Procks*, 258 AD2d 951, 952 [1999], *lv denied* 93 NY2d 976 [1999]). Notably, "[t]here is a distinction which can and must be drawn between . . . a tactical retreat and . . . a complete surrender" (*People v Garrick*, 11 AD3d 395, 396 [2004], *lv denied* 4 NY3d 744 [2004] [internal quotation marks and citation omitted]). Here, defense counsel made appropriate pretrial motions, extensively cross-examined the People's witnesses, highlighted inconsistencies in their testimony and advanced what we regard as a viable strategy in an attempt to stave off defendant's conviction of a class A-II felony. Under these circumstances, we are satisfied that defendant received meaningful representation. Defendant's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, J.P., Spain, McCarthy and Garry, JJ., concur. Ordered that the judgment and order are affirmed.